UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ROCKER MANAGEMENT, L.L.C.             :
ET AL.,                                              :
                                                            :
               Plaintiffs,                          :          CIVIL ACTION NO. 00-5965 (JCL)
                                                            :
               v.                                        :          **MEMORANDUM AND ORDER**
                                                            :
LERNOUT & HAUSPIE SPEECH       :                    (KPMG Belgium)
PRODUCTS N.V. ET AL.,                    :
                                                            :
               Defendants.                        :
_____ :

## LIFLAND, District Judge

Plaintiffs Rocker Management, LLC, Rocker Partners, LP, Rocker Offshore

Management Company, Inc., and Compass Holdings Ltd. (collectively, "Rocker")

have asserted claims under Sections 10(b) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17

C.F.R. § 240.10b-5, promulgated thereunder by the United States Securities and

Exchange Commission ("SEC"), against Defendants Jozef Lernout, Pol Hauspie,

Gaston Bastiaens, Carl Dammekens, Allan Forsey, Ellen Spooren, Erwin

Vandendriessche, Gerald Calabrese,[1] Klynveld Peat Marwick Goerdeler

Bedrijfsrevisoren (a/k/a KPMG Bedrijfsrevisoren or KPMG Belgium), KPMG

International ("KPMG"), KPMG UK, KPMG LLP ("KPMG US"), Paul Behets,

_____

[1]Section 20(a) claims are asserted against only the individual defendants.

and SG Cowen Securities Corporation ("Cowen").[2]  Plaintiffs also bring state law claims for tortious interference with prospective economic advantage, conspiracy to tortiously interfere, and aiding and abetting tortious interference.

Before the Court is the Motion of Defendant KPMG Belgium to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and the doctrine of forum non conveniens.  For the reasons set forth below, KPMG Belgium's Motion will be denied.

## FACTS

The facts of this case are described at length in the Court's June 7, 2005 Memorandum and Order denying the motions to dismiss on behalf of individual defendants Jozef Lernout, Pol Hauspie, and Gaston Bastiaens.  Allegations relevant to resolving this Motion are discussed herein, and, as noted, are taken from the Amended Complaint.

Plaintiff Rocker Management LLC ("Rocker Management") is a New Jersey company that administers and manages Plaintiff hedge fund Rocker Partners LP ("Rocker Partners").  (Am. Compl. ¶ 10).  Plaintiff Rocker Offshore Management

---

[2]A suggestion of death has been filed on behalf of Paul Behets.  In addition, the Court has been advised of a written and signed agreement to settle and release certain claims asserted against individual defendants Forsey, Spooren, Vandendriessche, and Calabrese.  The settlement is subject to certain conditions precedent, some of which have yet to occur.

Company, Inc. ("Rocker Offshore") is a New York corporation that manages Plaintiff hedge fund Compass Holdings, Ltd.  (Id.).

Defendant KPMG Belgium, a limited liability partnership organized under the law of and doing business in Belgium, is a public accounting firm and a member of KPMG International, a Swiss Association.  (Am. Compl. ¶¶ 23, 26).

Plaintiffs engaged in "short selling," which means identifying and purchasing stock that they expect to decline in price.  (Am. Compl. ¶¶ 5, 11). Profits result from borrowing stock from various sources, selling that stock at current market prices, purchasing shares of the stock at a lower price to "cover" the original position, and then returning the stock to the original source.  Id.

Plaintiffs began to short sell Lernout & Hauspie Speech Products N.V. ("L&H" or "the Company") stock in June 1998.  (Am. Compl. ¶¶ 6, 100).  The price of L&H stock subsequently increased, forcing Plaintiffs between December 1999 and March 2000 to purchase stock at a loss to cover their own short positions.  (Id. ¶¶ 6, 104).  Plaintiffs charge that the increase in L&H stock prices was the result of fraud on the part of L&H and/or SG Cowen.  Plaintiffs further allege that the rise in L&H stock may be attributed to certain financial statements issued by L&H for the fiscal year 1998, which overstated L&H revenue.  (Am. Compl. ¶¶ 51-52, 259).  L&H's independent auditor was KPMG Belgium.

On April 9, 1999, KPMG Belgium published its Independent Auditor's Report on L&H's financial statements for the year ending December 31, 1998 (Id. ¶ 51). KPMG Belgium allegedly made several false statements in those certified financials. First, financial statements falsely reported L&H's 1998 revenues. KPMG Belgium itself withdrew its own certification in late 2000 and disclosed to the investing public that its financial statements "should not be relied upon." (Id. ¶¶ 4, 123). L&H's Audit Committee later acknowledged that the statements inflated L&H's actual income by nearly $28 million (including by 24% and 23% in the last two quarters of 1998, respectively). Second, KPMG Belgium represented that it conducted an "independent" audit, thereby indicating that it had no financial interest or ties to L&H management. In fact, the KPMG "global account partner" for L&H who was responsible for overseeing the audit, Paul Behets, took a position with a L&H-related entity shortly after overseeing and certifying these falsified financials. (Id. ¶ 267). Third, KPMG Belgium represented that "[w]e conducted our audits in accordance with generally accepted auditing standards in the United States." In fact, the financials violated many important aspects of United States generally accepted accounting principles ("U.S. GAAP"), including the backdating of contracts, contracts entered into with related parties, and the existence of side agreements releasing customers of their

-4-

obligation to pay.  (Id. ¶ 209-10).  Finally, KPMG Belgium represented that the financials were "free of material misstatements," and that the financials "present fairly, in all material respects, the financial position of Lernout & Hauspie Speech Products, N.V.," when, in fact, they falsely inflated L&H's revenue by almost $28 million.  (Id. ¶ 52).

## DISCUSSION

### I.    Forum Non Conveniens

KPMG Belgium moves to dismiss this case on the basis of forum non conveniens, arguing that Belgium provides an adequate forum and that "the balance of conveniences" suggests that a trial in the United States would be "unnecessarily burdensome" for Defendants and the Court.

This Court may dismiss an action on forum non conveniens grounds when "an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to the defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] appropriate because of considerations affecting the Court's own administrative and legal problems.'"  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). There is a strong presumption in favor of Plaintiffs' choice of forum.  Id. at 255. Defendants bear the burden of persuasion as to all elements of the forum non

conveniens analysis.  <u>Lacey v. Cessna Aircraft Company</u>, 932 F.2d 170, 180 (3d Cir. 1991).

This Court concludes that it should not exercise its discretion to dismiss this case against KPMG Belgium on forum non conveniens grounds.  As explained below, the Court is not persuaded that manifest unfairness will result from hearing the case in this District.

First to be determined is whether the Belgium forum is "adequate" in the sense that defendant would be subject to service of process there and whether the forum permits litigation of the subject matter of the dispute.  <u>Piper Aircraft Co.</u>, 454 U.S. at 255, n.22.  KPMG Belgium has submitted the Declaration of Hans van Houtte to support its claim that Belgium is an adequate forum for this litigation. The declaration notes that nine of the defendants named in this action are Belgian and clearly subject to service of process there.  (van Houtte Decl. ¶¶ 5, 6).  Van Houtte goes on to state that the Belgian court would have jurisdiction over all other defendants (English, Dutch, and U.S.), as well.  (<u>Id.</u> ¶ 6).

Plaintiffs counter that it is unlikely a Belgian court would retain jurisdiction over the entire matter and over all defendants, and then only if all the acts which were criminal in nature took place in Belgium would that court retain jurisdiction. (Pls.' Br. at 87-88.).  Plaintiffs predict that, if this case were brought in Belgium,

there exists a potential for litigating against certain defendants in Belgium and others in the United States.  But this portion of Plaintiffs' argument does not appear to be supported by the declaration of Plaintiff's expert, Etienne Claes, and thus cannot be accorded any weight.[3]  In contrast, Defendant's expert declaration states the Belgian courts would have jurisdiction over all the parties in the case. (van Houtte Decl. ¶ 6).  KPMG Belgium has thus made an uncontroverted showing that Belgian courts would have jurisdiction over all parties.

Next to be determined is whether Belgium permits litigation of the substance of this dispute.  Plaintiffs point out, and KPMG Belgium concedes, that Belgium does not provide a cause of action identical to that provided by Rule 10b-5.  Nonetheless, KPMG Belgium asserts that the Companies Act of Belgium generally encompasses Plaintiffs' cause of action and that Belgium has before been held to provide an adequate forum for the resolution of fraud claims, Calavo Growers of California v. Generali Belgium, 632 F. 2d 963, 968 (2d Cir. 1980).

---

[3]The Declaration of Etienne Claes offers the following reasons why Belgium is an unsuitable forum: 1. Belgian discovery rules are less broad than those of American courts; 2. Belgian accounting criteria are different from GAAP and GAAS and Belgian courts are not familiar with those procedures/standards; 3. Belgian courts may be biased against short sellers; 4. there is no fundamental obstacle to enforcement of an American judgment in Belgium; 5. Plaintiffs may be required to post an up-front monetary bond in order to pursue litigation in Belgium; 6. litigation would proceed at a much slower rate in Belgium; 7.  Belgian courts do not have the expertise to adequately decide issues of American securities law; and 8.  Rocker's claims may be barred by the statute of limitations.

Plaintiffs dispute whether Belgium permits litigation of this sort.  The Claes

Declaration states that there is no equivalent civil action that can be brought in

Belgium and, more specifically, that no cause of action in Belgium is comparable

to an action for securities fraud under United States securities laws.  (Claes Decl. §

A).  Plaintiffs further claim that they would effectively be barred from bringing a

claim for civil damages for securities fraud.  In addition, short sellers are

apparently disfavored in Belgium.  (Claes Decl. § D).

The fact that the law of the foreign forum differs or is less favorable to

Plaintiffs is not conclusive in a forum non conveniens analysis.  What matters

most is when the remedy provided by the foreign forum is "so clearly inadequate

or unsatisfactory that it is no remedy at all."  <u>Piper Aircraft Co.</u>, 454 U.S. at 252

n.18, 254.  It is unclear to what extent Belgium would permit litigation of the

substance of this dispute.  However, the Court is not persuaded that Plaintiffs

would have no remedy at all were this case to proceed in Belgium.  Assuming that

Belgium is an adequate forum for this case to proceed, the Court must look further

to the balance of interest factors.

### *Private Interest Factors*

The private interest factors to be considered in a forum non conveniens

analysis are (1) relative ease of access to sources of proof; (2) the availability of

compulsory process for attendance of unwilling witnesses; (3) the cost of

obtaining attendance of the willing witnesses; and (4) all other practical problems

that make trial of a case easy, expeditious, and inexpensive.  <u>Gulf Oil Corp. v.

Gilbert</u>, 330 U.S. 501, 508 (1947).

As to accessing proof, KPMG Belgium urges that most of the documents

relating to KPMG Belgium's audits of L&H's financial statements originated

primarily in Belgium and are located there.  These include (1) L&H's license

agreements and operational documents; (2) L&H's accounting and financial books

and records; (3) KPMG Belgium's audit work papers; (4) documents held by Paul

Behets (now deceased), the engagement partner for the L&H audits from 1991 to

July 1999; and (5) the documents held by several start-up companies allegedly

used by L&H to inflate its revenues and to avoid research and development

expense.[4]

As to witnesses, KPMG Belgium notes that key witnesses with respect to

the alleged fraud at L&H–<u>i.e.</u>, the founders and former top management at L&H

(Jo Lernout, Pol Hauspie, Carl Dammekens, Gaston Bastiaens, and others) are all

located in Belgium.  (Lievens Decl. ¶ 12).  Some of those individuals are the

---

[4]KPMG Belgium notes that many of the documents are in Dutch and would have to be
translated for use in this action.  The Court is not persuaded by this argument, given that
documents would likely need to be translated regardless of the forum.

subject of criminal investigation in Belgium and may be subject to restraining orders that prohibit their departure from Belgium.

Plaintiffs counter that this matter spans multiple continents, that evidentiary and witness problems are not limited to any particular forum, and that the United States headquarters of L&H is likely a source of evidence.  About thirty boxes of documents have been produced by Defendants to the SEC and to Plaintiffs in the United States.  Plaintiffs point out that alternative arrangements for taking testimony can be made for Belgian witnesses restricted from leaving the country and that several defendants and witnesses in this action reside in or are located in the United States.

This Court finds the balance of private factors weighs against dismissing this case on forum non conveniens grounds.  Keeping the case here might pose difficulties in terms of witnesses, documents, and other proof, but no more so than problems attendant to any forum in which this case proceeds.

### *Public Interest Factors*

The public interest factors also tilt in favor of retaining the case against KPMG Belgium.  These factors include (1) practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere; (2) imposition on jurors called to hear a case that has no relation to the

community; and (3) familiarity of the court with applicable laws.  <u>Gulf Oil Corp.</u>,

330 U.S. at 509.

The Court has invested considerable time in this case and does not see a net

gain in dismissing this case as to one defendant.  This case has a substantial

relationship to the community and thus does not pose an undue burden on jurors.

There is of course a national interest in maintaining the integrity of the securities

market in the United States and, here, aggrieved Plaintiffs have ties to New Jersey.

In addition, the case against KPMG Belgium does not require this Court to apply

any unfamiliar foreign law.  The same cannot be said of the Belgian courts were

this case to proceed there.  The public factors decidedly weigh in favor of hearing

this case in this District.

None of the obstacles noted by KPMG Belgium are unique or

insurmountable so as to create "oppressiveness and vexation" to KPMG Belgium

"out of all proportion to [Plaintiffs'] convenience."  <u>Piper Aircraft Co.</u>, 454 U.S. at

241.  Accordingly, the Court declines to exercise its discretion to dismiss the case

against KPMG Belgium on forum non conveniens grounds.

## II.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

should be granted only if it "appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim that would entitle him to relief."  In re Cybershop.com Sec. Litig., 189 F. Supp. 2d 214, 223 (D.N.J. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  When resolving a motion to dismiss, a district court must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000).  However, the Court need not credit "bald assertions" or "legal conclusions."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### A.    Section 10(b) and Rule 10b-5 Claim

To state a claim pursuant to Rule 10b-5, Plaintiff must allege that (1) the defendant made a misrepresentation or omission of a material fact; (2) scienter motivated the defendant's misrepresentation or omission; (3) the defendant made the misrepresentation or omission in the context of a securities purchase or sale; (4) the plaintiff relied upon defendant's misrepresentation or omission; and (5) the plaintiff's reliance proximately caused damages.  In re Cybershop.com Sec. Litig., 189 F. Supp. 2d at 224.  Scienter may be pled by alleging facts (1) that demonstrate "'a motive and opportunity to commit fraud,'" or (2) that "constitute circumstantial evidence of either reckless or conscious behavior."  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999) (quoting Weiner v. Quaker

Oats Co., 129 F.3d 310, 318 n.8 (3d Cir. 1997) (explaining what remains sufficient after passage of the Private Securities Litigation Reform Act ("PSLRA")).

A plaintiff alleging false or misleading statements or omissions of material fact must meet the heightened pleading requirements of both Rule 9(b) and the PSLRA.  In re Cybershop.com, 189 F. Supp. 2d at 225.  Rule 9(b) requires that allegations of fraud, and the circumstances constituting the fraud, be pled with particularity.  Id.  While the particularity requirement may be relaxed where factual information is particularly within defendant's knowledge or control, "boilerplate and conclusory allegations will not suffice."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

Federal Rule of Civil Procedure Rule 9(b) demands that a plaintiff plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.  In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citing Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992)).  Rule 9(b) requires plaintiffs to identify the source of the allegedly fraudulent misrepresentation or omission.  Id. (citing Klein v. General Nutrition Cos., Inc., 186 F.3d 338, 345 (3d Cir.1999)).  In short, "Rule 9(b)

-13-

requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'–that is, the 'who, what, when, where and how' of the events at issue." Id. at 217 (quoting In re Burlington, 114 F.3d at 1422).

The PSLRA imposes an additional "layer of factual particularity" on allegations of securities fraud. In re Rockefeller Center Properties, Inc. Secs. Litig., 311 F.3d at 217-18. Under the PSLRA, a complaint alleging a Section 10(b) violation is insufficient unless it "specifies each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief[,] . . . state[s] with particularity all facts on which that belief is formed." In re Cybershop.com, 189 F. Supp. 2d at 226 (citing 15 U.S.C. § 78u-4(b)(3)(A)). All allegations of scienter must be supported by facts stated "with particularity" and must give rise to a "strong inference" of scienter. In re Advanta Corp. Sec. Litig., 180 F.3d at 535 (quoting 15 U.S.C. 78u-(b)(2)). As noted, this can be accomplished by "(a) alleging facts to show that defendants had both motive and opportunity to commit  fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Oran v. Stafford, 226. F.3d 275, 288-89 (3d Cir. 2000).

KPMG Belgium argues that Plaintiffs' federal securities law claim against it should be dismissed for failure to specify which conduct is attributable to KPMG Belgium; failure to allege that KPMG Belgium's alleged misrepresentation caused the loss that they claim to have suffered; and failure to adequately allege that KPMG Belgium acted with scienter in making any misstatements.  Each of these arguments is addressed separately below.

     *1.*    ***Misstatements***

KPMG Belgium asserts that the Amended Complaint fails to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), by not distinguishing between the separate KPMG Defendants (KPMG Belgium, KPMG LLP, KPMG UK) or attributing the wrongdoing to each defendant, individually. The Court agrees that, at several points, the Amended Complaint lumps the conduct of KPMG entities together by referring to "KPMG" and blurs the allegations against each defendant.  (See, e.g., Am. Compl. ¶¶ 45, 85, 92, 101, 117, 154, 162, 190, 196, 199-206, 209-13, 215, 218, 223, 227-28, 230-36, 243, 251, 255, 293-95).  That said, the Amended Complaint makes clear that KPMG Belgium signed the L&H 1998 financial statements, thereby representing that those statements accurately presented the financial condition of the company. (Am. Compl. ¶¶ 24, 52).  Those financials were admittedly overstated in the

amount of $28 million.  KPMG Belgium's preparation and signing of the audit report containing false information is sufficient to trigger primary liability under the federal securities law claim asserted against it.

### 2.    *Loss Causation*

KPMG Belgium argues that Plaintiffs' claims are also defective because they fail to allege that there was any causal relationship between their December 1999-March 2000 decisions to cover and the KPMG Belgium Auditor's Report issued in April 1999.  The argument goes that when Plaintiffs made their covering purchases and suffered damages, the audit report had been issued nine to eleven months earlier, involved financials that were more than a year old, and thus could not have "substantially contributed" to Plaintiffs' losses.  KPMG Belgium further argues that Plaintiffs do not allege that they relied on the audit opinion in making their cover purchases.

"[T]he Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005) (citing Fed. R. Civ. P. 8(a)(2)).  The pleading rules "are not meant to impose a great burden on a plaintiff."  Id. (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-15 (2002)).  Rather, the goal is simply for "a plaintiff who has suffered an economic loss to

-16-

provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."[5] Id. at 1634.

The Court is satisfied that the allegations relating to transaction causation in this short-selling context are sufficient to withstand a motion to dismiss based on loss causation. In the short-selling context, losses caused by artificially inflated stock prices are incurred at the time of cover. (This differs from the typical fraud-on-the-market scenario where purchasers buy at a fraudulently inflated price and then the stock subsequently drops once the truth is revealed to the market.) Here, it is alleged that L&H stock climbed in price during the period of December 1999 to March 2000 as a direct result of the scheme that included the making and publishing of fraudulent statements concerning falsified earnings reports for 1998. The allegations also detail an unraveling of the fraudulent scheme and an attendant drop in price of L&H stock. (See, e.g., Am. Compl. ¶¶ 1-4).

Read in the light most favorable to short-selling Plaintiffs, the inference to be drawn from the allegations of the Amended Complaint is that the false financial statements artificially inflated L&H stock, which, in turn, forced Plaintiffs to make cover transactions and incur significant losses. Fact-intensive issues related to

---

[5]In Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627, 1631 (2005), the United States Supreme Court held that in fraud-on-the-market cases, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss."

causation and whether a given misstatement "substantially contributed" to Plaintiffs' losses, <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 177, 181 n. 24 (3d Cir. 2001), are not properly resolved at this juncture.

  *3.* ***Scienter***

   Next, KPMG Belgium argues that the Amended Complaint fails to plead facts sufficient to give rise to a "strong inference" of scienter as to KPMG Belgium.  The argument is basically one of timing: many of the allegations concerning scienter on the part of KPMG Belgium pertain to dates subsequent to the certification of the audit report on April 9, 1999 and thus cannot give rise to any inference that KPMG Belgium engaged in knowing or reckless wrongdoing for purposes of reporting L&H's 1998 financials.

   Plaintiffs respond that the 1998 financials were republished in a January 2000 filing of a Form F-3 Registration statement with the SEC.  That statement incorporated by reference KPMG's certification of the 1998 L&H financial statements.  (Am. Compl. ¶¶ 73-74).

   For purposes of a Section 10(b) claim, a defendant's scienter must of course temporally coincide with the allegedly false statement.  The Court accordingly will focus on the allegations relating to scienter as to KPMG Belgium's certification of

the 1998 financials.[6]

The magnitude of any given misstatement or overstatement may help support an inference of scienter.  P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp. 2d 589, 609 (D.N.J. 2001); cf. McLean v. Alexander, 599 F.2d 1190, 1198 (3d Cir. 1979), but magnitude alone will not suffice, see, e.g., Reiger v. Price Waterhouse Coopers LLP, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) ("to avoid undermining the policies of the Reform Act through reliance on hindsight and speculation, a court should not infer an independent accountant's scienter based solely on the magnitude of its client's fraud"); In re SCB Computer Technology, Inc. Sec. Litig., 149 F. Supp. 2d 334, 357, 363 (W.D. Tenn. 2001) (magnitude of erroneous financial statement and resulting restatement were insufficient to sustain finding that auditor acted with scienter).

The restatement of L&H 1998 financials involved a 15% reduction and nearly $28 million in reported revenue.  (Am. Compl. ¶ 259).  This is a sizable reduction, notwithstanding that much larger reductions (not relevant here)

---

[6]Some allegations in the Amended Complaint concerning events that pre-date the April 1999 report do not inform this inquiry.  For instance, the allegations concerning Brussels Translations Group ("BTG"), specifically, that KPMG Defendants certified L&H financials reporting millions of dollars in supposed revenues from BTG and Dictation Consortium, occurred prior to April 1999.  However, the certifications involved include 1997, 1999, and 2000 financials, (Compl. ¶¶ 39-45), not the 1998 financials.  The 1998 financials are the only ones at issue so far as KPMG Belgium is concerned and thus the BTG allegations are not relevant here.

followed with the 1999 and 2000 L&H restatements.

There are additional factors that support scienter on the part of KPMG Belgium. KPMG Belgium knew of a lack of adequate internal controls at L&H, (Am. Compl. ¶¶ 235-41), had unfettered access to and knowledge of L&H's confidential internal corporate and financial information, and knew that L&H refused to record KPMG Belgium's recommended adjustments to financial statements, (id. ¶ 247). It is also alleged that KPMG Belgium had motive and opportunity to commit fraud in that substantial fees were earned for non-audit services and that certain employees responsible for auditing L&H benefitted directly from KPMG's relationship with L&H in the form of subsequent employment relationships with L&H entities, (id. ¶ 266).[7]

As to internal controls, the Amended Complaint alleges that KPMG Belgium knew that L&H's system of internal controls was inadequate because L&H had failed to implement an internal audit function. (Am. Compl. ¶¶ 235-41). At a meeting between KPMG Belgium and the Audit Committee on May 4, 1998, KPMG Belgium reported that the internal audit and internal control functions of

---

[7]Plaintiffs also allege violations of GAAP and GAAS to support an inference of scienter, but such allegations relate to revenue recognized by L&H in 1999 and 2000 and thus are not probative of scienter with regard to misstating 1998 financials. (Am. Compl. ¶¶ 35-45; 128-38, 163-64).

the Company needed to be strengthened.  KPMG Belgium also informed the audit

committee that the Company must improve its financial reporting for consolidated

financial statements.  (Id. ¶ 235).  Minutes of an April 12, 1999 Telephone

Meeting of the Board of Directors reveal that the Company had yet to establish an

internal audit function, (id. ¶ 237), and KPMG Belgium continued to report that

the Company's internal controls were inadequate (id. ¶ 238).  These allegations

may be attributed to KPMG Belgium in that Paul Behets, of KPMG Belgium, was

the audit partner on the L&H engagement through July 1999.  (Id. ¶¶ 185, 238,

267).

There are also allegations that KPMG Belgium had full access to

information as to L&H's internal corporate and financial information, (id. ¶¶ 204-

05), thereby suggesting that KPMG Belgium had reason to know of the fraud.

The alleged refusal of L&H to record KPMG Belgium's recommended

adjustments in the amount of $440,000 to its financial statements is yet another

factor suggesting that KPMG Belgium acted with scienter.  (Id. ¶247).  At this

procedural stage, the Court must afford Plaintiffs the favorable inference that

KPMG Belgium should have suspected wrongdoing as a result of this refusal.

Further, there are allegations to suggest that KPMG Belgium had motive

and opportunity to commit fraud.  Two KPMG Belgium employees responsible for

auditing L&H benefitted directly from the Company in the form of lucrative employment relationships with entities related to L&H.  (Am. Compl. ¶ 266).  Paul Behets, the engagement partner on the 1998 L&H audit, left KPMG Belgium in July 1999 to become the chief executive officer of a foundation created by L&H known as S.A.I.L. Trust.  (Am. Compl. ¶ 267).  S.A.I.L. Trust is alleged to have held a one-third interest in FLV Managements, N.V., which, in turn, was the manager of the FLV Fund, which was allegedly audited by KPMG Belgium.  (Id.). Chantal Hestdagh left KPMG Belgium in 1998 to become CFO of LHIC, which is alleged to be on of the "related parties" through which L&H funded its unaffiliated customers.  (Id. ¶ 268).  While there is nothing inherently wrong with a former auditor taking a job with a client, the timing and circumstances of these departures, in light of the other allegations discussed above, would suggest a motive and opportunity to commit fraud.

This Court concludes that the aforementioned allegations, when coupled with the grand scale of the restatement, are sufficient to create a strong inference that KPMG Belgium acted with scienter in certifying the 1998 L&H financials.

### 4.   Republication of 1998 Financials and February 9, 2000 Press Release

Plaintiffs urge this Court to take into consideration KPMG Belgium's duty

to correct or withdraw its certification of the 1998 financials, which it did not do until late 2000.  See Wright v. Ernst & Young, 152 F.3d 169, 177 (2d Cir. 1998) (discussing duty of accounting firms to take reasonable steps to correct misstatements).  The argument goes that KPMG Belgium's certification was republished in January 2000 and thereby served to maintain the falsely inflated stock price of L&H.  Plaintiffs also rely on the statement of 1999 revenue figures announced in a February 9, 2000 L&H press release.  The Amended Complaint alleges that KPMG Belgium compiled those revenue figures mentioned in the press release.  (Am. Compl. ¶ 92).

The alleged representation of L&H's 1998 Financials in January 2000 need not be addressed at this juncture, given the Court's determination that the motions to dismiss will be denied.

The February 2000 press release relates to L&H's 1999 unaudited financial results.  KPMG Belgium is not alleged to have authored the press release, (Am. Comp. ¶ 92), or even to have been mentioned therein.  Allegations that KPMG Belgium reviewed or approved the press release, without more, are not sufficient to render KPMG Belgium liable for making a material misstatement.  See Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 191 (1994); Ziemba v. Cascade Int'l, 256 F.3d 1194, 1205-07 (11th Cir. 2001); Wright v. Ernst

& Young LLP, 152 F.3d 169, 175 (2d Cir. 1998).

### B.    State Law Claims

The elements of a cause of action for tortious interference are (1) a protected interest; (2) defendant's intentional interference without justification; (3) a reasonable likelihood that the benefit plaintiff anticipated from the protected interest would have continued but for the interference; and (4) resulting damage. Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739 (1989).

KPMG Belgium challenges the sufficiency of the tortious interference claims on the basis that there is no allegation that KPMG Belgium knew who Plaintiffs were, much less that KPMG Belgium intentionally interfered with their rights. See Woods Corporate Assocs. v. Signet Start Holdings, Inc., 910 F. Supp. 1019, 1032 (D.N.J. 1995). This argument is not persuasive. The Amended Complaint alleges that in a scheme to "squeeze the shorts," Defendants interfered with Plaintiffs' prospective economic advantage in a manner that violated common morality. The reasonable inference to be drawn from allegations concerning a scheme purposely directed at "the shorts" is that Defendants knew of Plaintiff short sellers. The Court will not dismiss the tortious interference claims on this basis. KPMG Belgium will be permitted to test the tortious interference claims during discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, KPMG Belgium's Motion to Dismiss the federal securities claim and the pendent state law claims will be denied.

According, **IT IS** on this 7th day of June 2005,

**ORDERED** that the Motion of Defendant KPMG Belgium to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and the doctrine of forum non conveniens is denied.

/s/ John C. Lifland, U.S.D.J.   