UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ROCKER MANAGEMENT, L.L.C.      :
ET AL.,                        :
                               :
        Plaintiffs,            :      CIVIL ACTION NO. 00-5965 (JCL)
                               :
        v.                     :      **MEMORANDUM AND ORDER**
                               :
LERNOUT & HAUSPIE SPEECH       :           (KPMG US)
PRODUCTS N.V. ET AL.,          :
                               :
        Defendants.            :
_____:

## LIFLAND, District Judge

Plaintiffs Rocker Management, LLC, Rocker Partners, LP, Rocker Offshore

Management Company, Inc., and Compass Holdings Ltd. (collectively, "Rocker")

have asserted claims under Sections 10(b) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17

C.F.R. § 240.10b-5, promulgated thereunder by the United States Securities and

Exchange Commission ("SEC"), against Defendants Jozef Lernout, Pol Hauspie,

Gaston Bastiaens, Carl Dammekens, Allan Forsey, Ellen Spooren, Erwin

Vandendriessche, Gerald Calabrese,[1] Klynveld Peat Marwick Goerdeler

Bedrijfsrevisoren (a/k/a KPMG Bedrijfsrevisoren or KPMG Belgium), KPMG

_____

[1]Section 20(a) claims are asserted against only the individual defendants.

International ("KPMG"), KPMG UK, KPMG LLP ("KPMG US"),[2] Paul Behets, and SG Cowen Securities Corporation ("Cowen").[3]  Plaintiffs also assert state law claims for tortious interference with prospective economic advantage, conspiracy to tortiously interfere, and aiding and abetting tortious interference.

Before the Court is the Motion of Defendant KPMG US to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons set forth below, the Motion of Defendant KPMG US will be granted.

## **FACTS**

The facts of this case are described at length in the Court's June 7, 2005 Memorandum and Order denying the motions to dismiss on behalf of individual defendants Jozef Lernout, Pol Hauspie, and Gaston Bastiaens.  Allegations relevant to resolving this motion are discussed herein, and, as noted, are taken from the Amended Complaint.

Plaintiff Rocker Management LLC ("Rocker Management") is a New Jersey

---

[2]KPMG UK changed its name to KPMG LLP in connection with its conversion to a limited liability partnership.  Thus, the American KPMG and the United Kingdom KPMG are both "KPMG LLP."  To avoid confusion, the Court will refer to KPMG UK and KPMG US.

[3]A suggestion of death has been filed on behalf of Paul Behets.  In addition, the Court has been advised of a written and signed agreement to settle and release certain claims asserted against individual defendants Forsey, Spooren, Vandendriessche, and Calabrese.  The settlement is subject to certain conditions precedent, some of which have yet to occur.

company that administers and manages Plaintiff hedge fund Rocker Partners LP

("Rocker Partners").  (Am. Compl. ¶ 10).  Plaintiff Rocker Offshore Management

Company, Inc. ("Rocker Offshore") is a New York corporation that manages

Plaintiff hedge fund Compass Holdings, Ltd.[4]  (Id.).

      Defendant KPMG US is a public accounting firm based in the United States

and a member of KPMG International, a Swiss Association and one of the world's

leading financial service providers.  (Am. Compl. ¶¶ 23, 26).

      Plaintiffs engaged in "short selling," which means identifying and

purchasing stock that they expect to decline in price.  (Am. Compl. ¶¶ 5, 11).

Profits result from borrowing stock from various sources, selling that stock at

current market prices, purchasing shares of the stock at a lower price to "cover"

the original position, and then returning the stock to the original source.  (Id.).

      Plaintiffs began to short sell Lernout & Hauspie Speech Products N.V.

("L&H" or "the Company") stock in June 1998.  (Am. Compl. ¶¶ 6, 100).  The

price of L&H stock subsequently increased, forcing Plaintiffs between December

---

[4]KPMG US argues that Plaintiffs Rocker Management and Rocker Offshore do not have standing to sue under Section 10(b) because they are not "purchasers" or "sellers" of securities, but allegedly "manage[d]" Rocker Partners and Compass, respectively (Am. Compl. ¶ 10).  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-55 (1975); Zlotnick v. Tie Communications, 836 F.2d 818, 821 (3d Cir. 1988) (noting that Blue Chip "limited the class of potential plaintiffs under § 10(b) to those who actually purchased or sold securities").  Plaintiffs have not responded to this argument and, therefore, the Court assumes that they concede this point.

1999 and March 2000 to purchase stock at a loss to cover their own short positions.  (Id. ¶¶ 6, 104).  Plaintiffs charge that the increase in L&H stock prices was the result of fraud on the part of L&H and/or SG Cowen.  Plaintiffs further allege that the rise in L&H stock may be attributed to certain financial statements issued by L&H for the fiscal year 1998, which overstated L&H revenue.  (Am. Compl. ¶¶ 51-52, 259).  L&H's independent auditor was Defendant KPMG Belgium.

On April 9, 1999, KPMG Belgium published its Independent Auditor's Report on L&H's financial statements for the year ending December 31, 1998 (Id. ¶ 51).  KPMG Belgium allegedly made several false statements in those certified financials.  First, financial statements falsely reported L&H's 1998 revenues. KPMG Belgium itself withdrew its own certification in late 2000 and disclosed to the investing public that its financial statements "should not be relied upon."  (Id. ¶¶4, 123).  L&H's Audit Committee later acknowledged that the statements inflated L&H's actual income by nearly $28 million (including by 24% and 23% in the last two quarters of 1998, respectively).  Second, KPMG Belgium represented that it conducted an "independent" audit, thereby indicating that it had no financial interest or ties to L&H management.  In fact, the KPMG "global account partner" for L&H who was responsible for overseeing the audit, Paul

Behets, took a position with a L&H-related entity shortly after overseeing and certifying these falsified financials.  (Id. ¶ 267).  Third, KPMG Belgium represented that "[w]e conducted our audits in accordance with generally accepted auditing standards in the United States."  In fact, the financials violated many important aspects of United States generally accepted accounting principles ("GAAP"), including the backdating of contracts, contracts entered into with related parties, and the existence of side agreements releasing customers of their obligation to pay.  (Id. ¶¶ 209-10).  Finally, KPMG Belgium represented that the financials were "free of material misstatements," and that the financials "present fairly, in all material respects, the financial position of Lernout & Hauspie Speech Products, N.V.," when, in fact, they falsely inflated L&H's revenue by almost $28 million.  (Id. ¶ 52).

        At times, the Amended Complaint uses "KPMG" to refer collectively to KPMG Belgium, KPMG US, and KPMG UK.  As to KPMG US, Plaintiffs base their Section 10(b) claim on KPMG Belgium's audit report on L&H's 1998 financial statements.  (Am. Compl. ¶¶ 26, 51-53, 101, 293).  The Amended Complaint alleges that Robert P. McLamb, a KPMG partner who worked from both the UK and US offices, id. ¶ 37, "worked extensively on the L&H audits and reviews" during the relevant time period, id. ¶ 187.  However, there are no

allegations that KPMG US issued any audit opinions of its own or made any statements connected to the L&H audits.

## DISCUSSION

**A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." In re Cybershop.com Sec. Litig., 189 F. Supp.2d 214, 223 (D.N.J. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  When resolving a motion to dismiss, a district court must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000).  However, the court need not credit "bald assertions" or "legal conclusions."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**B.     Statute of Limitations**

KPMG US argues that Plaintiffs' Section 10(b) claim asserted against it should be dismissed as time-barred.  Claims brought under Section 10(b) or Rule 10b-5 must be filed "within one year after the discovery of the fact constituting the violation and within three years after such violation."  Lampf, Pleva, Lipkind,

Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991).  Inquiry notice is the standard for determining when the one-year limit begins to run, i.e., when the fraud was or should have been discovered.  In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1325 (3d Cir. 2002).  Under that standard, the limitations period begins to run when a plaintiff "discovered or in the exercise of reasonable diligence should have discovered the basis for [his] claim against the defendant." Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 571 (D.N.J. 2002) (internal quotations omitted).  It is an objective standard that governs when the limitations period begins to run.  In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 599 (D.N.J. 1996).

Plaintiffs' allegations against KPMG US are based on its alleged participation in the 1998 audit work reported in the April 9, 1999 audit opinion. KPMG argues that, at the latest, the one-year statute of limitations on a Section 10(b) claim against KPMG US began to run on December 7, 2000, the date Plaintiffs filed their Original Complaint against, among others, KPMG Belgium. KPMG US maintains that it was not until more than one year later and more than three years after any alleged violation by KPMG US that Plaintiffs asserted a Section 10(b) claim against it.

KPMG US argues that because the audit work can only have occurred prior

to the issuance of the April 9, 1999 report by KPMG Belgium, the alleged wrongdoing by KPMG US could only have occurred more than three years before Plaintiffs commenced suit against it, on April 8, 2002.  Thus, according to KPMG US, Plaintiffs failed to assert their Section 10(b) claim against KPMG US within three years of the alleged violation of the securities laws or within one year of discovery of the violation.

Plaintiffs respond that the alleged violation occurred in the April 9, 1999 audit report and, therefore, suit was filed within the requisite three-year period. The Court agrees.  The April 9, 1999 audit report constitutes the misstatement and Plaintiffs brought suit within three years of that date.  Although Plaintiffs did not file any claims against KPMG US until April 8, 2002, which is more than one year after their original Complaint, they claim that they did not discover evidence of its role in the scheme until they received thirty-three boxes of documents that L&H had produced to the SEC in late February 2002.  (Hermann Cert. in Opp. to Defs.' Motions to Dismiss, Exs. A, B).  Thus, according to Plaintiffs, their adding KPMG US as a defendant on April 8, 2002 was both within one year of discovery and within three years of KPMG US's statement at issue–the April 9, 1999 certification of L&H financials.

The Court is not inclined to dismiss the action against KPMG US on the

basis of statute of limitations at this juncture.  It is not readily apparent from the face of the Amended Complaint that Plaintiffs failed to commence this action within the statute of limitations.  See Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) ("[I]f a statute of limitations bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).").  To the contrary, it appears that Plaintiff did bring suit within three years of the violation.  Whether Plaintiffs knew or had reason to know of the involvement of KPMG US more than one year before they filed suit is disputed between the parties and not properly resolved on a motion to dismiss.

**Section 10(b) and Rule 10b-5 Claim**

To state a claim pursuant to Rule 10b-5, Plaintiff must allege that (1) the defendant made a misrepresentation or omission of a material fact; (2) scienter motivated the defendant's misrepresentation or omission; (3) the defendant made the misrepresentation or omission in the context of a securities purchase or sale; (4) the plaintiff relied upon defendant's misrepresentation or omission; and (5) the plaintiff's reliance proximately caused damages.  In re Cybershop.com Sec. Litig., 189 F. Supp. 2d at 224.  Scienter may be pled by alleging facts (1) that demonstrate "'a motive and opportunity to commit fraud,'" or (2) that "constitute

circumstantial evidence of either reckless or conscious behavior." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999) (quoting Weiner v. Quaker Oats Co., 129 F.3d 310, 318 n.8 (3d Cir. 1997) (explaining what remains sufficient after passage of the Private Securities Litigation Reform Act ("PSLRA")).

A plaintiff alleging false or misleading statements or omissions of material fact must meet the heightened pleading requirements of both Rule 9(b) and the PSLRA. In re Cybershop.com, 189 F. Supp. 2d at 225. Rule 9(b) requires allegations of fraud, and the circumstances constituting the fraud, be pled with particularity. Id. While the particularity requirement may be relaxed where factual information is particularly within defendant's knowledge or control, "boilerplate and conclusory allegations will not suffice." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

The particularity requirement of Rule 9(b) demands that a plaintiff plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citing Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992)). Rule 9(b) requires plaintiffs to identify the source of the

allegedly fraudulent misrepresentation or omission.  Id. (citing Klein v. General Nutrition Cos., Inc., 186 F.3d 338, 345 (3d Cir.1999)).  In short, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'–that is, the 'who, what, when, where and how' of the events at issue."  Id. at 217 (quoting In re Burlington, 114 F.3d at 1422).

The PSLRA imposes an additional "layer of factual particularity" on allegations of securities fraud.  In re Rockefeller Center Properties, Inc. Secs. Litig., 311 F.3d at 217-18.  Under the PSLRA, a complaint alleging a Section 10(b) violation is insufficient unless it "specifies each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief[,] . . . state[s] with particularity all facts on which that belief is formed."  In re Cybershop.com, 189 F. Supp. 2d at 226 (citing 15 U.S.C. § 78u-4(b)(3)(A)).  All allegations of scienter must be supported by facts stated "with particularity" and must give rise to a "strong inference" of scienter.  In re Advanta Corp. Sec. Litig., 180 F.3d at 535 (quoting 15 U.S.C. 78u-(b)(2)).

KPMG US challenges the viability of the federal securities law and common law claims brought against it.  It argues that the Section 10(b) claims should be

dismissed because (1) there are no allegations that either Plaintiffs or the market relied on any statement by KPMG US such that Plaintiffs can satisfy the reliance prong of a Section 10(b) claim; (2) the allegations against KPMG US identify no misstatements or omissions by KPMG US and at most amount to aiding and abetting liability, which is not actionable as to 10(b) claims; (3) Plaintiffs' "one firm" theory of liability runs afoul of Federal Rule of Civil Procedure 9(b) and the PSLRA; and (4) Plaintiffs' pendent state law claims are deficient.

Reliance

This Court's analysis of reliance in the short selling context is governed by Zlotnick v. Tie Communications, 836 F.2d 818 (3d Cir. 1988). The Third Circuit has held that short sellers are not entitled to the presumption of reliance because, unlike typical investors who rely on the market to reflect the true value of stock, short sellers operate on the assumption that the market is not efficient. See id. at 823 ("[T]he short seller is not injured because he knew of or depended on the misrepresentation; he is injured because others investing in the stock so relied."). Nonetheless, the short seller might be able to prove "actual indirect reliance." This can be done by demonstrating a change in investment strategy and actual reliance on the 'integrity' of the inflated market price at the time of cover or, as Plaintiffs allege in this case, that a rise in stock price increased the risk of loss

-12-

beyond acceptable levels, which caused one to enter into a cover transaction.  See id. at 824.

KPMG US argues that Plaintiffs have failed to allege actual indirect reliance on the audit opinion, which is the only misstatement to which KPMG US is connected.  The audit opinion was published eight months before Plaintiffs' first alleged cover purchase in December 1999, and then republished in a January 7, 2000 Form F-3 Registration Statement that L&H filed with the SEC.  The republication occurred during the period of time that Plaintiffs covered their short positions.

The Court is satisfied that, under Zlotnick, Plaintiffs adequately plead reliance by alleging that a drastic rise in stock price, occasioned by a fraudulent scheme that included overstated financials, increased their risk of loss beyond acceptable levels so as to cause them to make cover purchases.  See id.  At the motion to dismiss stage, the Court must afford Plaintiffs all favorable inferences with respect to those allegations.  Whether Plaintiffs will ultimately succeed in demonstrating reliance/causation in light of timing and other factors is not to be resolved at this juncture.

Material Misstatements

Plaintiffs allege that KPMG US participated in the audits and revenue

compilation via McLamb, who was responsible for ensuring the compliance of L&H financial reports with the United States GAAP rules. McLamb is alleged to be a KPMG SEC reviewing partner, based in the KPMG-UK division called the US Capital Markets Group, who worked extensively on the L&H audit and review. KPMG US allegedly passed information to KPMG Belgium that was ultimately incorporated into L&H's financials.

KPMG US argues that Plaintiffs' claims against it are barred under <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 191 (1994), in which the Supreme Court of the United States held that Section 10(b) does not create a private cause of action for aiding and abetting liability. In so holding, the Court rejected a "substantial assistance" standard for aiding and abetting claims under Section 10(b). <u>Id.</u>

KPMG US emphasizes that there is no allegation that it actually signed any of the audit reports or was listed in L&H's financial disclosures as a principal auditor. It further argues that many of the allegations that KPMG US, via McLamb, knew of or reviewed certain documents at most suggest aiding and abetting liability.

The Amended Complaint alleges that McLamb prepared certain parts of the 1998 financial statements. (Am. Compl. ¶ 192). Whether McLamb's

-14-

"preparation" of parts of the 1998 financial statements is sufficient to trigger primary liability is a close call.  Judge Saris in In re Lernout & Hauspie Securities Litig., 230 F. Supp. 2d 152, 168 (D. Mass. 2002), reasoned that "[a]bsolving an auditor who prepares, edits, and drafts a fraudulent financial statement knowing it will be publicly disseminated simply because an affiliated auditor with which it is working under a common trademark is the one to actually sign it, would stretch Central Bank's holding too far."  However, some circuits have held that for primary liability to attach, the public must be able to attribute a misleading statement to the secondary actor at the time it is issued.  See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) ("[A] secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination . . . that is, in advance of the investment decision."); Ziemba v. Cascade Int'l, 256 F.3d 1194, 1205 (11th Cir. 2001) ("Following the Second Circuit, we conclude that . . . the alleged misstatement or omission upon which a plaintiff relies must have been publicly attributable to the defendant at the time that the plaintiff's investment decision was made.").  But see In re Software Toolworks Inc. Sec. Litig., 50 F.3d 615, 628 n.3 (9th Cir. 1994) (holding that an accountant who has a "significant role in drafting and editing" a materially false and misleading statement may be held primarily liable under § 10(b)); In re ZZZZ

Best Sec. Litig., 864 F. Supp. 960, 970 (C.D. Cal. 1994) (permitting Section 10(b)

liability of auditor who had "intricate" involvement in the making of

misstatements, even though statements were not reasonably attributable to

auditor).

Plaintiffs point out and Defendants do not dispute that the Third Circuit has

not adopted the public attribution requirement, although some district courts in

this circuit appear to have done so. See, e.g., Copland v. Grumet, 88 F. Supp. 2d

326, 332-33 (D.N.J. 1999) (following Wright); In re IKON Office Solutions, Inc.

Sec. Litig., 131 F. Supp. 2d 680, 685 n.5 (E.D. Pa. 2001) (same). Plaintiffs urge

this Court to conclude that the allegedly false statements made by McLamb and

passed along for publication are sufficient to state a Section 10(b) claim. (Am.

Compl. ¶ 188 ("Conversion of Local to US GAAP has been reviewed by Bob

McLamb and Digby Wirtz, audit partners of US Capital Markets London Office . .

. .  All US reporting issues have been cleared with KPMG US Capital Markets

Group London.'"); ¶ 193 ("'key issues were discussed and conclusions reached in

agreement with advice from the US Capital Markets Group in London . . . .

KPMG personnel from all participating offices involved reviewed the revenue

recognition . . . .'")).  And, as noted, it is specifically alleged that McLamb

"actually prepared and provided certain amounts and disclosures to L&H's 1998

financial statements."  (Am. Compl. ¶ 192).

KPMG US is not directly connected to the audit opinion of L&H's 1998 financial statements when it was KPMG Belgium that issued and signed the audit opinion.  (Am. Compl. ¶¶ 24, 52, 293).  Indeed, Plaintiffs concede that "the public record did not establish KPMG US's involvement" at the time they relied on the alleged misrepresentations at issue in this case.  (Pls.' Opp. at 73).[5]  Even with the allegation that McLamb prepared and provided "certain amounts" to the 1998 L&H financial statements, this Court finds the allegations insufficient to allege primary liability for making a material misstatement under Section 10(b).  At most, McLamb's involvement with regard to the 1998 financials amounts to review, assistance, and participation, all of which culminated in KPMG Belgium's issuance of the audit opinion.  McLamb's conduct can only be categorized as preparatory, which is insufficient to trigger primary liability under § 10(b).

"One Firm" Theory

There are several references in the Amended Complaint to the actions and knowledge of a collective "KPMG" entity.  (See, e.g., Am. Compl. ¶¶ 182, 189).

---

[5]The Court is mindful that Plaintiffs make a point about the public record not revealing KPMG US's involvement in the context of a statute-of-limitations challenge.  However, that point applies with equal force where application of the public attribution requirement is concerned.

Plaintiffs urge this Court to allow them to proceed on a "one firm theory," i.e., that "KPMG" holds itself out to the world as one firm with accountants in offices world-wide.  The Court declines to adopt that approach.

Here, the materials cited to in the Amended Complaint make clear that the international KPMG organization is an association of distinct offices/companies. The KPMG International 1999 Annual Report described KPMG International as a "Swiss association with member firms in 159 countries that perform the professional services described in this report."[6]  (KPMG International 1999 Annual Rpt. at 32).  The Report also indicates that the KPMG International balance sheet "represents composite information of the separate member firms of KPMG International and is combined here solely for presentation purposes. KPMG itself is a non-operating association."  (Id. at 31).

The lumping together of KPMG offices under one "KPMG" reference offends the particularity requirements embodied in Rule 9(b) and the PSLRA and is insufficient to rescue the deficiencies in the allegations concerning misstatements attributable to KPMG US.

## C.    State Law Claims

---

[6]In deciding a 12(b)(6) motion, a court may consider documents "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The Amended Complaint alleges state law claims against KPMG US for tortious interference with prospective economic advantage (Count V), conspiracy to engage in tortious interference (Count VI), and aiding and abetting tortious interference (Count VII) under state law.  Having concluded that the Section 10(b) claims asserted against KPMG US should be dismissed, the Court will not exercise supplemental jurisdiction over the remaining state law claims against it. Where underlying federal claims providing the Court with original jurisdiction have been dismissed, a federal court has discretion to decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(a), (c).  Moreover, the Third Circuit has recognized that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  There appearing to be no such considerations here, the Court will decline to exercise jurisdiction over the tortious interference and conspiracy claims.

## CONCLUSION

For the foregoing reasons, all claims asserted against KPMG US will be

dismissed.

According, **IT IS** on this 7th day of June 2005,

**ORDERED** that the claims of Plaintiffs Rocker Management, LLC and

Rocker Offshore Management Company, Inc. are dismissed for lack of standing;

and it is further

**ORDERED** that the Amended Complaint is dismissed as against Defendant

KPMG US.

/s/ John C. Lifland, U.S.D.J.____